# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 28, 1920.

### VICTOR SCHLOSSENBERG VS. ROSE SCHLOSSENBERG.

*William Duncan* and *Benjamin H. McKindless* for plaintiff.

*Ellis Levin* for defendant.

DAWKINS, J.—

This bill has been filed to annul a marriage on the ground of insanity existing at the time of marriage unknown to the plaintiff.

The argument this morning, especially the concluding argument, has confirmed me as to the law that should govern a case of this kind. I would have no difficulty about it except as to the child that has been brought into the world and the fact of there having been a former case in which this defendant has been relieved of marriage on account of insanity, the same ground upon which the plaintiff herein seeks relief.

I cannot help feeling that this lady was insane some years ago, that she has been insane through all the time intervening, covering the time before and after and when this present marriage took place, and is insane at the present time. The very best evidence of the latter condition existing is that she is not in court, but, on the contrary, is detained in a hospital for the insane. I have no doubt if she were able to be here she would be present.

The question to be determined is how far we should go in relieving this plaintiff and at the same time protecting this child. Those are the questions about which the court has been thinking since the case commenced. If the case were considered longer I would not be any nearer reaching a certain solution. Notwithstanding the cases read this morning, if the action had been brought on behalf of an insane person or a person otherwise incapacitated, that person would unquestionably have a right to be relieved from a contract of marriage which was entered into while so incapacitated.

If one party asks for relief where incapacity to enter into a contract exists he might not always be entitled to it. If you make a contract with a minor the minor can seek to be relieved, but it is not always so clear that the party contracting with him should be relieved. This plaintiff had no opportunity—there is nothing suggested in the testimony at all that he had any opportunity—to know this young lady's mental condition except in so far as he observed it during the short time that he visited her prior to the marriage. He knew nothing that went before, and nobody told him. I listened most carefully to the parents' statement. There was not a word said to him by them indicating to him her real mental state. Whilst he is perhaps a bright person, yet he is not a man gifted with any unusual intelligence. It never occurred to him (and nobody says they told him) that the young lady had been in various hospitals a number of times and had been previously divorced on account of that disease. They told him she had been in a hospital, but they told him she had been in some nervous condition, and said nothing more than that. So there was nothing at all said by the parents or any one else indicating that she was insane or that she had been under treatment for insanity. He did not know either by anything that was told him or anything that he saw more than that, so he was willing to take a chance as to her nervousness. As I said yesterday, we must realize that love is blind to many defects, so that this young man was easily influenced or forced to marry her—more especially if he cared for her as he indicated. He may perhaps have thought it was a good business venture. A good many young men think it is the proper thing to get married. He was not discouraged by the young lady's parents in his wish. The best evidence of that is that the home was bought, whether bought directly for the young people or not I do not know, but bought two weeks after the parties met. Whilst there was some suggestion that the father was operating in real estate and that he bought the house for himself, it does not look that way. It does not look like the father went up and bought "the little home," as he called it, merely for a speculation. He gave it to the young man, and the young man later paid for it.

It was under those conditions that they got married. I have read the testimony in the other case by consent of counsel. I have not considered Dr. Gundry as being very satisfying in the somewhat different statements, because he did say in effect in that case that this particular mental disease might be relieved and now he thinks it cannot be cured, but the unanimous medical testimony in this case (and Dr. Gundry now so testifies) is to the contrary, and the young lady's condition has been the same prior to and ever since the first marriage. The young man's mention of her actions and peculiarities alone might not establish insanity, but I cannot ignore the testimony of the experts and all of these experts are distinguished doctors who with one accord say the same thing. There is not a word of adverse medical testimony.

These good neighbors who testified as to the defendant's actions may be say-

ing what is perfectly true, but there is not a scintilla of evidence to show her writing and bookkeeping and sewing or anything of that kind which these witnesses describe, so while the burden of proof is primarily on the plaintiff, they have met that proof. The most convincing thing is that the mother took care of her child during the period under discussion, but that might have been during a period of quiet that the doctors mention—the same condition of quiet that existed at the time of marriage; but even that might be explained by the fact that the mother after the period of child-birth, even though her mind has been disturbed, is either liable to take a like for or dislike to the child—if she likes it she will take care of it. That is the history of those cases. The whole question is this: did the husband know that the wife was insane prior to or at the time of marriage, and if he did not know it actually, did he have any reasonable opportunity of knowing it, and if he did know it did he marry her in that condition?

Now, the conclusion is the court believes the young lady was insane prior to the first marriage. She might have had lucid intervals, might even have been lucid at the very time she married, but this plaintiff did not have an opportunity of knowing of her insanity and he did not know it and married her while she was insane. The conclusion reached greatly affects the child, and it affects the wife, who is not here to speak for herself; yet the court cannot help feeling that if that condition existed that the husband should be relieved from the bonds of matrimony as she was from them in the other suit. The parents testified in that suit that she was not responsible, and did not know what she was doing when she married her first husband. She said that she had forgotten what she did and the mother and father backed that up, and she was relieved.

The doctors now say that her condition is apparently worse than it has been since before her first marriage.

The parents did, perhaps as many other parents do, want this young girl to get married. The young man is doubtless telling the truth when he says that they encouraged in every way the marriage, not perhaps with the idea of improperly "roping him in," but hoping that the young lady's health would be restored and that she would be better

off married; so they arranged this home and helped in the marrying. I do not see any special delinquency on the part of the young man; it might be possible that the apparent bad treatment was on account of her condition. This is a very unfortunate situation, under the law, and under the testimony and in view of the history of the case, a decree granting the husband the relief prayed will be signed. At the same time the decree should show the reason for the action so as to make it plain as far as we can do it the reason for the decree in order to preserve the full legitimacy of the child. A decree should not be signed merely that the marriage is annulled. In the other case the decree simply says the divorce is granted. I do not want to say that only in this decree. I want to say in the decree that the marriage is annulled and give somewhat more in detail the history of the case.

The husband should support the child and the decree should require this. The amount suggested as having been paid, $5 a week, he making only $19 a week, should go in the decree, and also he should pay the costs. If the grandparents of the child want it, they would be the proper custodians of the child. The decree should state that the money should be paid through the Prisoners' Aid Association.

· The testimony should be written before the decree is signed. We must realize that this little baby has been brought into the world—and if we assume that the wife is insane—it has been done without her fault. These are my conclusions. Prepare the decree after the testimony is written, and I will be prepared to sign it.

Mr. McKindless: Will you state what the form of decree should be in regard to that portion about not being annulled?

The Court: What I mean by that is, I think that the decree should show after consideration of all questions that the court has reached the conclusion that the testimony has established the fact that the defendant was apparently insane at the time of marriage, that the plaintiff did not know of that fact, and just on that ground the marriage is annulled. Say that in the decree so that anybody picking up that decree in the future, or a copy of it, will know why we are annulling this marriage.